16-1992-cv
*Kuzma v. U.S. Dep't of Justice*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of May, two thousand seventeen.

Present:
> JOHN M. WALKER, JR.,
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> *Circuit Judges.*

———————————————————————

MICHAEL KUZMA,

> *Plaintiff-Appellant*,

> v.                                                                              16-1992-cv

UNITED STATES DEPARTMENT OF JUSTICE,

> *Defendant-Appellee*.

———————————————————————

| | |
|---|---|
| For Plaintiff-Appellant: | BARRY A. BACHRACH, Bachrach & Bachrach, Leicester, Massachusetts |
| | Daire B. Irwin, Law Office of Daire B. Irwin, Buffalo, New York |
| For Defendant-Appellee: | MARY K. ROACH, for James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Buffalo, New York |

Appeal from a judgment of the United States District Court for the Western District of New York (Skretny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Michael Kuzma appeals from the April 19, 2016 judgment of the United States District Court for the Western District of New York (Skretny, *J.*) granting summary judgment to the government in Kuzma's action challenging the response by the Federal Bureau of Investigation ("FBI") to Kuzma's request for information about civil rights activist Ray Robinson pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. We assume the parties' familiarity with the facts, the procedural history of the case, and the issues on appeal, which we refer to only as necessary to explain our decision.

\*       \*       \*

We review de novo a district court's summary judgment decision in a FOIA case. *Florez v. CIA*, 829 F.3d 178, 182 (2d Cir. 2016). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, an agency defending its response to a FOIA request has the burden of showing it conducted an adequate search for the requested records and that any withheld records fall within a FOIA exemption. § 552(a)(4)(B); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). The agency sustains this burden if it submits "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812. The government's affidavits or declarations must "contain reasonable specificity of detail rather than merely conclusory

2

statements." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (emphasis omitted) (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)). In this context, the government's submissions benefit from a presumption of good faith. *Carney*, 19 F.3d at 812. While a plaintiff may rebut this presumption with evidence that contradicts the government's assertions or indicates the agency's bad faith, speculation about the existence and discoverability of records will not do. *Grand Cent. P'ship*, 166 F.3d at 489.

### A. Adequacy of Search

Kuzma first contends the FBI's search for a piece of June Mail potentially responsive to his request was inadequate.[1] An adequate search is one "reasonably calculated to discover the requested documents." *Grand Cent. P'ship*, 166 F.3d at 489. Adequacy turns on the search method employed, "not whether it actually uncovered every document extant." *Id.* Here, the FBI's declarations explain that although its initial search indicated there existed a piece of June Mail potentially responsive to Kuzma's request, the June Mail was "missing from the location likely to maintain the document." J.A. 164. Despite searching all appropriate locations, and searching on two occasions, FBI personnel failed to locate the document. These facts establish the FBI's search was "reasonably calculated to discover" the missing June Mail. *See Grand Cent. P'ship*, 166 F.3d at 489; *accord Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985) (noting the government is not required to account for missing documents "if it has made a diligent search for those documents in the places in which they might be expected to be found").

Kuzma argues there must be special procedures for accessing June Mail, and because the FBI's declarations do not detail such procedures, the search could not have been adequate.

---

[1] According to the FBI, the "June Mail" designation was used by the Bureau prior to November 1978 "to identify certain sensitive information relating to the Bureau's most sensitive sources and highly confidential or unusual investigative techniques." J.A. 164. After its use was terminated, the FBI indexed material in its possession bearing this designation into its general file.

3

However, to the extent Kuzma means the government did not in fact search all appropriate locations, he provides no non-speculative basis for concluding the FBI's declarations were not made in good faith. *See Grand Cent. P'ship*, 166 F.3d at 489. Kuzma suggests, for example, that the FBI should have placed the missing files on "special locate," but he does not explain either what that means or how the FBI's failure to do so rendered the search inadequate. At any rate, insofar as Kuzma proposes search methods he believes are superior to those used by the FBI, we note that FOIA demands a reasonable search, not a perfect or ideal one. *See id.* We agree with the district court's determination that Kuzma failed to raise a genuine issue of material fact about the adequacy of the FBI's search.

In response to Kuzma's request, the FBI identified a total of 782 pages of potentially responsive documents. After review, it released 590 pages in whole or in part, withholding certain pages on the basis of various FOIA exemptions.

## B. Exemption 3

Kuzma challenges the FBI's withholding of certain records pursuant to Exemption 3, § 552(b)(3), which removes from FOIA's disclosure mandate "matters that are . . . specifically exempted from disclosure by" another statute, if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." § 552(b)(3). Reviewing an agency's withholding pursuant to Exemption 3, we consider two questions: (1) whether the statute in question is a withholding statute, and if so (2) whether the withheld material qualifies under that statute. *See CIA v. Sims*, 471 U.S. 159, 167 (1985). Here, Kuzma does not dispute that the statute the government relies upon—Federal Rule of Criminal Procedure 6(e), concerning the secrecy of grand jury matters—is a withholding statute

4

under FOIA. *E.g.*, *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981). Kuzma also does not dispute that the material the government withholds on this basis is grand jury material.

Kuzma instead argues the district court should have ordered the FBI to disclose the withheld material because, in his view, there are exceptional circumstances warranting this disclosure. He relies primarily on *In re Craig*, 131 F.3d 99 (2d Cir. 1997), in which we held that courts have the authority to release grand jury information under exceptional circumstances beyond those outlined in Rule 6. *Id.* at 101–03. *Craig*, however, is beside the point. *Craig*'s holding that district courts, "as part of their supervisory authority over the grand juries that they have empaneled," *see id.* at 102, may exercise discretion, in exceptional circumstances, to release grand jury material does not mean these materials do not fall within Rule 6(e)'s protection and so are not properly withheld pursuant to Exemption 3. Nor does *Craig* permit (let alone require) an agency (rather than a court) to release grand jury information when it finds exceptional circumstances present. *See id.* at 106 (noting the government's "position is not dispositive," and "[g]overnment support cannot 'confer' disclosure, nor can government opposition preclude it"). Kuzma did not seek release of grand jury information from "the district court that initially supervised the grand jury," as *Craig* discusses, *see id.* at 102 n.2, but pursuant to FOIA.[2] As to FOIA, the government established the applicability of Exemption 3, and the district court properly granted summary judgment in its favor on this point.

---

[2] Kuzma did not argue before the district court that the district court had the authority to—and should—release the grand jury materials he sought. *See Kuzma v. U.S. Dep't of Justice*, No. 13-cv-675-WMS-LGF, Dkt. No. 32-2, at 4 (PDF pagination). Insofar as Kuzma recast, at oral argument, his claim as a petition seeking release from a court, we note that generally we "do not consider a claim raised for the first time on appeal," *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 218 (2d Cir. 2006), and we decline to do so here.

### C. Exemptions 6 and 7(C)

Kuzma also complains the FBI improperly withheld records under Exemptions 6, § 552(b)(6), and 7(C), § 552(b)(7)(C), each exempting disclosures on the basis of privacy interests that outweigh the public interest in disclosure. Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6). Similarly, Exemption 7(C) applies to "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[3] § 552(b)(7)(C). Although Exemption 7(C) by its terms provides a greater degree of protection than Exemption 6, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989), their coverage overlaps, *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 284 n.9 (2d Cir. 2009). Accordingly, we consider Exemptions 6 and 7(C) together in this case.

The first step in the balancing inquiry is determining whether disclosure "would compromise a substantial, as opposed to *de minimis*, privacy interest," because in the latter case, FOIA demands disclosure. *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 176 (2d Cir. 2014); *see Associated Press*, 554 F.3d at 285. Above the de minimis threshold, "[t]he privacy side of the balancing test is broad and 'encompasses all interests involving the "individual's control of information concerning his or her person."'" *Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005) (quoting *Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 87 (2d Cir. 1991)). In balancing the privacy interest against the public interest, we consider "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing

---

[3] The parties in this case do not dispute that the specific records at issue, for which Exemption 7 is claimed, meet the threshold requirement for that exemption, namely, that they "were compiled for law enforcement purposes," § 552(b)(7).

significantly to public understanding of the operations or activities of the government.'" *Cook*, 758 F.3d at 177 (brackets and emphasis omitted) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994)); *see Associated Press*, 554 F.3d at 288.

The government argues that exposing the identities of individuals who worked on, or otherwise participated in or became associated with, the criminal investigations that are the subject matter of Kuzma's FOIA request could expose those individuals to a host of harms, including unwanted media inquiries, harassment, violence, and stigma. These harms, it contends, overshadow the minimal (if any) public interest in learning the identities of the individuals. Kuzma argues not that the privacy interests at stake are de minimis, or otherwise unworthy of protection, but that the public interest in the fate of Ray Robinson as a general matter, and "in how the FBI mishandled the investigation into Robinson's disappearance and murder," more specifically, outweigh them. But "[w]hether the public has an interest in the identity of federal workers, and to what extent, depends on circumstances, including whether the information sought sheds light on government activity." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 193 (2d Cir. 2012). The same is true when the information at issue concerns third parties. *Associated Press*, 554 F.3d at 292–93. Here, Kuzma does not explain how knowing the names of the individuals involved in the investigation will further illuminate the FBI's activities. His assertion, without evidence, that this particular information will reveal fault in the government's handling of the Robinson case is not enough. *See Associated Press*, 554 F.3d at 289. To the extent Kuzma means that learning the identities will provide further avenues for research, we have observed that "courts have been skeptical of recognizing a public interest in this 'derivative' use of information," *Long*, 692 F.3d at 194; *see also Associated Press*, 554 F.3d

at 290. Even assuming the prospect of such derivative use could outweigh privacy interests in a hypothetical case, Kuzma has not shown that is true here.

### D. Exemption 7(A)

Kuzma also challenges the FBI's withholding of information under Exemption 7(A), § 552(b)(7)(A), which applies to "records or information compiled for law enforcement purposes" that "could reasonably be expected to interfere with enforcement proceedings." § 552(b)(7)(A). On this basis, the FBI withheld information from three pages of responsive records, explaining the withheld information would disclose information about a pending investigation of an individual other than the subject of Kuzma's FOIA request. The FBI asserts that revealing the name of the individual under investigation, or the details of the investigation, would interfere with that investigation—including by tipping off the subject of the investigation. Kuzma argues that it is not credible that the information withheld by the FBI concerns an ongoing investigation. But Kuzma's unsupported personal opinion that this investigation is unlikely is not the contradictory evidence or evidence of bad faith required to overcome the presumption of good faith we afford the government's declarations. *See Grand Cent. P'ship*, 166 F.3d at 489. The government established the applicability of Exemption 7(A), and the district court properly granted summary judgment in its favor on this point.

### E. Exemption 7(D)

Kuzma's last contention concerns the FBI's withholding of information under Exemption 7(D), § 552(b)(7)(D), which applies to "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source, . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source."

8

§ 552(b)(7)(D). The applicability of this exemption turns on "whether the particular source spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis omitted).

Conceding the FBI's assertions that the withheld information was "compiled . . . in the course of a criminal investigation," § 552(b)(7)(D), and that the withheld information was provided by, or could reasonably be expected to disclose the identity of, a confidential source within the meaning of FOIA, Kuzma argues that because two individuals allegedly involved in this case have been, in his view, officially confirmed as confidential informants through their testimony in open court, information with respect to them cannot be withheld on this basis.[4] This argument fails for two reasons. First, as a factual matter, we are skeptical that Kuzma's evidence supports his claim that the FBI waived Exemption 7(D) by disclosing the identities of two confidential informants. Kuzma offers evidence only that certain individuals worked with the FBI in other cases, including by testifying in those cases. Kuzma appears to suspect, based on this evidence, that the same individuals were involved in the Robinson matter and that the FBI is withholding information about them in records responsive to his FOIA request. But Kuzma's suspicion does not overcome the FBI's claim that the responsive material withheld *here* would reveal the identities of, or information gathered from, confidential sources. Second, even if Kuzma's evidence proved the FBI had acknowledged the identities of these alleged informants, that would not amount to a blanket waiver of Exemption 7(D)'s protection. Rather, we have "reject[ed] the idea that subsequent disclosures of the identity of a confidential source or of some of the information provided by a confidential source requires full disclosure of

---

[4] Kuzma also argues that Exemption 7(D) does not apply because newspaper articles have described these two individuals as government informants. Newspaper articles, however, do not constitute an official confirmation and cannot prevent the government from properly invoking Exemption 7(D).

9

information provided by such a source." *Ferguson v. FBI*, 957 F.2d 1059, 1068 (2d Cir. 1992). Even assuming, *arguendo*, that public disclosure of specific information that the government would otherwise be entitled to withhold under Exemption 7(D) removes that protection, Kuzma has surely not established that the information in the public domain is the same as the information withheld. *See Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). We affirm the district court's award of summary judgment to the government on this point as well.

We have considered Kuzma's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk